*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| LAURA CAUDLE, | ) |
| | ) |
|       *Plaintiff* | ) |
| | ) |
| v. | )   No. 1:15-cv-201-JHR |
| | ) |
| CAROLYN W. COLVIN, | ) |
| *Acting Commissioner of Social Security,* | ) |
| | ) |
|       *Defendant* | ) |

***MEMORANDUM DECISION*[1]**

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge supportably found the plaintiff capable of performing work existing in significant numbers in the national economy. The plaintiff seeks remand on the bases that the administrative law judge erred in assessing her mental residual functional capacity ("RFC") and in refusing to admit late-tendered evidence from the Maine Department of Health & Human Services ("DHHS"), and the Appeals Council erred in declining review on the basis that there was no reasonable probability that the DHHS evidence would have been outcome-determinative. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 15) at 5-13. Because the administrative law judge's assessment of the plaintiff's mental

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me on March 18, 2016, pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record. The parties have consented to have me conduct all proceedings in this matter, including the entry of judgment. ECF No. 17.

RFC is unsupported by substantial evidence, I vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through March 31, 2009, Finding 1, Record at 14; that she had severe impairments of anxiety-related disorder/anxiety NOS (not otherwise specified), substance addiction disorder/history of alcohol abuse, benzodiazepine abuse with current evidence of prescribed Suboxone without medical basis, Finding 3, *id.*; that she had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: due to a mental health impairment, she could understand and remember simple instructions and execute simple tasks on a consistent schedule to complete a workday/workweek, interact with coworkers and supervisors, tolerate occasional, superficial contact with the general public, and adapt to occasional changes in the routine workplace, Finding 5, *id.* at 16; that, considering her age (29 years old, defined as a younger individual, on her amended alleged disability onset date, September 1, 2008), education (at least high school), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 7-10, *id.* at 19; and that she, therefore, had not been disabled from September 1, 2008, through the date of the decision, January 15, 2014, Finding 11, *id.* at 20. The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I. Discussion

On March 18, 2012, on initial review of the plaintiff's disability applications, agency nonexamining consultant David R. Houston, Ph.D., noted that she had missed two consulting examiner appointments and that there was "insufficient evidence for a mental impairment" currently, in addition to no evidence of a mental impairment as of her date last insured for SSD benefits, March 31, 2009. Record at 59, 66. The plaintiff's claims were denied. *See id*. at 60, 67.

As of August 15, 2012, when a second agency nonexamining consultant, Mary A. Burkhart, Ph.D., assessed the plaintiff's claims on reconsideration of that denial, *see id*. at 76-80, 88-91, the plaintiff had been seen by agency examining consultant James R. Werrbach, Ph.D., who prepared a report dated August 7, 2012, *see id*. at 501-03. Dr. Burkhart noted that a consultative examination was required because "[t]he evidence as a whole, both medical and non-medical, is

3

not sufficient to support a decision on the claim." *Id*. at 75, 87.  She indicated that, this time, the consultative examination appointment had been kept.  *See id.*

Dr. Werrbach described his report as containing "the reasons [the plaintiff] gave for seeking disability payments, the symptoms that she suffers, a brief overview of her employment history, a brief description of her activities of daily living, a mental status assessment, diagnoses per DSM-IV, and a medical source statement." *Id*. at 501.  He did not indicate that he reviewed any records or interviewed anyone other than the plaintiff.  *See id.*

Dr. Werrbach summarized the plaintiff's report of her history, treatment, symptoms, and activities of daily living.  *See id*. at 501-02.  He then set forth what appears to be the results of his mental status examination:

> [The plaintiff] was cooperative during this interviewing process.  I was able to engage her in conversation and she offered adequate information to my questions. Her attire was casual but appeared to be clean and neat.  She appeared to pay attention to her grooming and hygiene.  [She] is a short woman with a thin build. There was nothing unusual about her posture, gait or motor activity.  [She] appeared to be quite anxious during this interview.  At times she was wringing her hands while talking with me.  She did maintain good eye contact with me.  The rate of her speech was rapid.  She stated that this was so because she was so nervous being in an interview with me.  The volume and fluency of her speech were within normal limits.  Her speech was not marked by peculiar expressions nor was it stilted.  There was nothing in this interview that suggested that [the plaintiff] suffers from hallucinations, deluded thinking or other evidence of a thought disorder.  Her thought processes were sequential, clear and coherent although as stated before, she spoke very rapidly.  She was oriented to time, place, person and situation.  Her memory appeared to be intact.  She was able to concentrate and attend to my questions appropriately.  Her insight into her difficulties appeared to be fair.  Her social judgment appeared to be highly compromised.

*Id*. at 503.  Dr. Werrbach diagnosed the plaintiff with post-traumatic stress disorder, generalized anxiety disorder, social anxiety, obsessive-compulsive disorder, and alcohol dependency in sustained, full remission.  *See id*.  He concluded:

> It would appear that [the plaintiff] would not have difficulty doing a work-related activity such as understanding.  It would appear that her ability to do work-related

4

>activities such as memory, sustained concentration and persistence, social interaction, and adaptation to new social situations would be highly compromised due to the high level of anxiety that she exhibits.

*Id*.

With the benefit of the Werrbach report, Dr. Burkhart found that there was no evidence of a medically determinable mental impairment as of the plaintiff's date last insured, *see id*. at 76, 88, and that, currently, she had only a mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration, persistence, or pace, with no repeated episodes of decompensation, *see id*. at 77, 89.  She explained that Dr. Werrbach had found that the plaintiff was not in any mental health or substance abuse treatment, reported that she spent her days reading and caring for her children when she had them, was cooperative and able to engage in conversation, offering adequate information, had no unusual motor activity, had sequential, clear, and coherent thought processes, was oriented, had an intact memory, and was able to concentrate.  *See id*.  She further observed that the plaintiff had reported, in an activities-of-daily-living form, that she did personal care, prepared meals, did household chores, used public transportation, shopped, managed money, read, went to appointments, and followed instructions, and that she had completed three years of college.  *See id*.

Dr. Burkhart completed a mental RFC assessment in which she indicated that the plaintiff had no limitations in understanding, memory, or sustained concentration and persistence and was not significantly limited in any other respect except for her ability to interact appropriately with the general public, which she stated was markedly limited.  *See id*. at 79, 91.  She summarized:

>[The plaintiff] is able to interact with coworkers and supervisors, but due to reported anxiety no frequent public contact.  [She] presents adequately to health care professionals.
>
>She has a roommate, spends time with her children, visits a neighbor, uses public transportation and shops.

5

*Id*.

Dr. Burkhart indicated that she had given the Werrbach opinion "[o]ther" weight, explaining that it "appear[ed] based mostly on cl[aimant] report and not objective evidence." *Id*. at 78, 90. Elsewhere, she explained that Dr. Werrbach's opinion was more restrictive than hers because it "relie[d] heavily on the subjective report of symptoms and limitations provided by the individual, and the totality of the evidence d[id] not support the opinion[,]" it was "without substantial support from other evidence of record, which render[ed] it less persuasive[,]" and it was "an overestimate of the severity of the [plaintiff's] restrictions/limitations and based only on a snapshot of [her] functioning." *Id*. at 80, 92.

Like Dr. Burkhart, the administrative law judge found that the plaintiff had only a mild limitation in activities of daily living and a moderate limitation in social functioning. *See id*. at 15. However, he found that she had a moderate, rather than a mild, limitation in concentration, persistence, or pace. *See id*. He explained:

> She reports that she has trouble with focus, for instance, since her mind often races, and she has problems following instructions due to her desire not to make any mistakes. Despite these issues, though, the record shows that she shops on a weekly basis and is able to count change, pay bills, and manage her bank accounts. Dr. Werrbach . . . also noted [her] thought processes as sequential, clear and coherent; memory was intact, and he found her able to concentrate and respond to questions appropriately.

*Id*. (citations omitted).

With respect to opinion evidence, the administrative law judge explained that he was "in general accord with the findings of [Dr. Burkhart], who found the longitudinal data reflective of no more than mild to moderate limitations in the broad areas of functioning." *Id*. at 18. He noted that there were "no subsequent clinical reports to counter Dr. Burkhart's findings, since no treating provider has provided any assessment of the [plaintiff's] functional capacity." *Id*. He added that

Dr. Burkhart "also had access to more evidence" than had her predecessor, whom he mistakenly referred to as Brian Stahl, Ph.D., rather than Dr. Houston. *Id*. He explained that he gave "[o]nly partial weight" to the Werrbach report, "since he based his evaluation solely on the subjective reports of the [plaintiff] without benefit of clinical evidence[,]" and he "did not have access to the complete psychological outline, where his report shows that the [plaintiff] failed to disclose her illicit use of benzodiazepine or Suboxone to the doctor." *Id*. (citation omitted).[2]

The plaintiff argues that both Dr. Burkhart and the administrative law judge mishandled the Werrbach evidence and that, for several reasons, the administrative law judge's mental RFC determination is unsupported by substantial evidence. *See* Statement of Errors at 5-11.

To begin, the plaintiff's criticism of Dr. Burkhart's handling of the Werrbach report is not well-taken. The plaintiff asserts that, although Dr. Burkhart acknowledged that there was insufficient evidence to assess the case absent a consultative examination, she rejected Dr. Werrbach's critical determinations. *See id*. at 6. She contends that, accordingly, Dr. Burkhart's rejection of the Werrbach report left no basis for her opinions. *See id*.

While Dr. Burkhart did not explain which portions of the Werrbach opinion she rejected, she clearly agreed that the plaintiff's anxiety impacted her social functioning but disagreed that it affected her memory or sustained concentration and persistence. *Compare* Record at 79, 91 *with id*. at 503. She did not lack sufficient evidence to reach that conclusion: she cited Dr. Werrbach's own findings on examination that the plaintiff had clear and coherent thought processes, was oriented, was able to concentrate, and appeared to have an intact memory, as well as the plaintiff's

---

[2] The administrative law judge elsewhere had noted that the plaintiff had abused alcohol, narcotics, and benzodiazepines as recently as 2011 and that she had admitted to social worker and drug counselor Mary Moore in December 2012 that she had been buying Suboxone on the street as a way to manage her cravings for alcohol. *See* Record at 17-18.

7

activities of daily living, including reading, attending appointments, following instructions, and completing three years of college. *See id*. at 77, 89.[3]

Nonetheless, I agree with the plaintiff that the administrative law judge's mental RFC is unsupported by substantial evidence. Despite stating that he was "in general accord" with the Burkhart findings, *see id*. at 18, the administrative law judge assessed a moderate, rather than mild, limitation in concentration, persistence, or pace and set forth restrictions that were unsupported by any opinion evidence, most significantly, that the plaintiff was limited to understanding and remembering simple instructions and executing simple tasks on a consistent schedule to complete a workday/workweek, *see id.* at 15; Finding 5, *id*. at 16. It is a basic tenet of Social Security law that an administrative law judge may not assess an RFC based on his or her own interpretation of raw medical evidence unless it is possible to render a common-sense judgment about that evidence. *Gordils v. Secretary of Health & Human Servs*., 921 F.2d 327, 329 (1st Cir. 1990). It is hardly clear, as a matter of common sense, that moderate restrictions in concentration, persistence, or pace would result in a need for a limitation to simple tasks/instructions.

The commissioner counters that (i) the administrative law judge permissibly partially credited the plaintiff's subjective allegations to find her more restricted than the medical evidence suggested and, (ii) in any event, any error was harmless in that the administrative law judge reached a result more favorable to the plaintiff than the medical evidence supports. *See* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 21) at 9-10; *see also, e.g.,*

---

[3] At oral argument, the plaintiff's counsel contended that Dr. Burkhart missed a key point: that Dr. Werrbach's assessment was based not on the plaintiff's subjective allegations but rather, on his clinical observations that she "appeared to be quite anxious[,]" was wringing her hands at times, and had rapid speech. Record at 503. He contended that, at the very least, Dr. Burkhart (or the administrative law judge) should have contacted Dr. Werrbach for clarification of the origin of the assessed limitations. I cannot conclude, as a layperson, that Dr. Burkhart's expert opinion is so lacking in factual foundation as to be erroneous as a matter of law. As discussed above, she cited several of Dr. Werrbach's findings on examination in support of her opinion.

*Peak v. Colvin*, No. 2:15-cv-67-JHR, 2015 WL 7681256, at *3 (D. Me. Nov. 24, 2015) ("[I]n this district, a plaintiff is not entitled to remand on the basis of an RFC that is more favorable than the evidence would otherwise support.").

On the first point, the commissioner contends that the administrative law judge reasonably assessed the plaintiff with a restriction to simple instructions/tasks based on her ability to perform such activities as shopping regularly and maintaining her finances, as well as her admitted capacities to perform household chores, care for her children, read, and watch television. *See* Opposition at 10. Yet, while such activities of daily living might constitute evidence in support of such a finding, the administrative law judge, as a layperson, was not equipped to infer from those activities alone that she had those specific limitations and no others.

Nor can the administrative law judge be said merely to have credited the plaintiff's testimony in assessing that limitation. The only relevant testimony that he noted was that the plaintiff had asserted that "she has trouble with focus, for instance, since her mind often races, and she has problems following instructions due to her desire not to make any mistakes." Record at 15. Yet, he did not make clear whether he was crediting or discrediting those allegations. *See id*. Assuming that he meant to credit them, it is unclear how his assessment of a restriction to simple tasks/instructions either addressed or reflected them.[4]

---

[4] As the plaintiff suggests, *see* Statement of Errors at 10-11, the administrative law judge compounded the error of assessing a limitation based on the raw medical evidence by setting forth a limitation that does not, on its face, necessarily address a moderate restriction in concentration, persistence, or pace. This court has held that such a limitation can adequately account for such a restriction when the limitation is supported by expert opinion or sufficiently explained by the decision-maker. *See, e.g., Tilton v. Colvin*, No. 2:13-cv-96-GZS, 2014 WL 294477, at *6 (D. Me. Jan. 27, 2014). But neither is the case here. *See* Record at 16-19. The commissioner cites *Stanley v. Colvin*, Civil No. 1:13-cv-186-DBH, 2014 WL 1767103, at *2 (D. Me. Apr. 29, 2014), and *Veach v. Commissioner, Soc. Sec. Admin*., Civil No. 1:13-CV-76-DBH, 2014 WL 35362, at *4 (D. Me. Jan. 6, 2014), for the proposition that nonetheless, there is no error because there is no medical opinion evidence supporting greater restrictions. *See* Opposition at 11. She asserts that, while Dr. Werrbach conditionally suggested greater limitations, both Dr. Burkhart and the administrative law judge supportably rejected his opinion as based primarily on the plaintiff's subjective complaints. *See id*. But, as discussed above, the administrative law judge did not adequately explain his handling of the Werrbach report or the origin of his finding of restrictions in concentration, persistence, or pace.

Nor, turning to the second point, is it clear that the administrative law judge's finding was more favorable than the evidence would otherwise support. As the plaintiff points out, *see* Statement of Errors at 8, although the administrative law judge stated that he gave only partial weight to the Werrbach opinion, he never explained how, *see* Record at 18. If, unlike Dr. Burkhart, he credited, even to some extent, Dr. Werrbach's opinion that the plaintiff's anxiety impacted her memory and ability to concentrate as well as her social functioning, his assessment was not more favorable than the record supported.

At oral argument, counsel for the commissioner contended that it was clear that the administrative law judge did not credit Dr. Werrbach's opinion as to the impact of the plaintiff's anxiety on her concentration, persistence, or pace because he excluded such a limitation. I am unpersuaded. The administrative law judge found a greater restriction in concentration, persistence, or pace than did Dr. Burkhart, yet the limitation he assessed does not clearly correlate with either the Werrbach opinion or the plaintiff's subjective allegations. As the plaintiff suggests, *see* Statement of Errors at 11, in the absence of further explication, it is impossible to tell whether the administrative law judge's mental RFC determination is or is not supported by substantial evidence or whether any error is harmless.[5] Reversal and remand, accordingly, are warranted on

---

[5] Through counsel at oral argument and in her brief, the commissioner cited *Paquin v. Colvin*, No. 1:13-cv-360-JDL, 2014 WL 6679123 (D. Me. Nov. 25, 2014), for the proposition that the administrative law judge's assessed mental RFC was more favorable than the evidence supports. *Paquin* is distinguishable in that the claimant did "not cite any medical evidence in the record supporting a more restrictive limitation that would result from the moderate limitation in concentration, persistence, or pace." *Paquin*, 2014 WL 6679123, at *3. In that case, two agency nonexamining consultants had found that the claimant had no severe mental impairment, *see id.*, while an agency examining consultant had concluded that the claimant "would have difficulty concentrating on work requirements and persisting with what [was] asked of him" but was "able to understand and remember information in a work environment" and had a Global Assessment of Functioning ("GAF") score of 70, indicative of only a mild impairment. *Id.* at *4 (citation and internal quotation marks omitted). The court found that the administrative law judge's assessed limitation to simple, routine, repetitive tasks to address a moderate limitation in concentration, persistence, or pace was more favorable than the evidence supported. In this case, by contrast, Dr. Werrbach opined that "[i]t would appear that [the plaintiff's] ability to do work-related activities such as memory [and] sustained concentration and persistence . . . would be *highly compromised* due to the high level of anxiety that she exhibits." Record at 503 (emphasis added).

this basis. *See, e.g., Staples v. Astrue*, Civil No. 09-440-P-S, 2010 WL 2680527, at *4 (D. Me. June 29, 2010) (rec. dec., *aff'd* July 19, 2010) (commissioner's argument that administrative law judge permissibly assessed claimant's mental RFC as of a remote date last insured "might have proved persuasive had [she] clarified how she derived the specific components of her RFC" from disparate sources, including portions of a mental status examination report, "[b]ut she did not").

Two more points bear mentioning. First, I do not reach the plaintiff's assertions that the administrative law judge erred in declining to admit the DHHS evidence and the Appeals Council erred in determining that it would not have been outcome-determinative. Nevertheless, I see no reason why, on remand, this evidence should not be admitted, although I express no opinion as to the weight it should be given.

Second, I decline the commissioner's request to uphold the decision as to the plaintiff's SSD claim. *See* Opposition at 5 n.4 & 14 n.5. "To be eligible to receive SSD benefits [a claimant] ha[s] to have been disabled on or before [his or] her date last insured . . .; however, eligibility for SSI benefits is not dependent on insured status." *Chute v. Apfel,* No. 98-417-P-C, 1999 WL 33117135, at *1 n.2 (D. Me. Nov. 22, 1999) (rec. dec., *aff'd* Dec. 20, 1999). The commissioner argues that any error in the handling of either the Werrbach report or the DHHS evidence could not have had any bearing on the denial of the plaintiff's SSD claim because the Werrbach and DHHS evidence addressed her current functioning, not her condition as of her date last insured for SSD benefits, March 31, 2009. *See* Opposition at 5 n.4 & 14 n.5.

However, as the plaintiff's counsel pointed out at oral argument, the decision of the administrative law judge addressed, without differentiation, the entire period at issue. *See* Record at 14-20. To uphold the decision in part on a basis not articulated by the administrative law judge would run afoul of the so-called *Chenery* rule. *See, e.g.*, *Day v. Astrue,* No. 1:12-cv-141-DBH,

2012 WL 6913439, at *10 (D. Me. Dec. 30, 2012) (rec. dec., *aff'd,* Jan. 18, 2013) (pursuant to *SEC v. Chenery Corp.,* 332 U.S. 194 (1947), "a reviewing court cannot affirm an agency's decision on the basis of a *post hoc* rationalization but must affirm, if at all, on the basis of a rationale actually articulated by the agency decision-maker") (citation and internal quotation marks omitted). While "[a]n exception to the *Chenery* rule exists when a remand will amount to no more than an empty exercise because, for example, application of the correct legal standard could lead to only one conclusion[,]" *id.* (citation and internal quotation marks omitted), the commissioner has not acknowledged *Chenery*, let alone argued that the exception pertains here, *see* Opposition at 5 n.4 & 14 n.5.

## II. Conclusion

For the foregoing reasons, the commissioner's decision is **VACATED**, and the case is **REMANDED** for proceedings consistent herewith.

Dated this 29th day of April, 2016.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge